Good afternoon Judge Berzahn, Judge Reinhart, Judge Pollak. My name is Gary Gorski. I represent the appellates, Mr. Hunter and Mr. Eli. There's basically two issues to address here. The first issue is whether there was a mistrial essentially by the jury not getting a duly admitted exhibit, part of an exhibit. And the second issue is on the injuring instructions to the jury on Monell liability. And if I recall, there's a problem with the first issue as to what you agreed to. I would devote more of my time to the second issue. That's just one judge's suggestion. Okay. Just to touch on the first issue, I just want to be clear about what the record shows, is that, first of all Well, quite aside from what the record shows, how is this document that they didn't have pertinent to anything that could have mattered to anybody? I know they asked a question about it, but what could they have possibly mattered? Pardon me, Your Honor? Why could this document that they didn't have have mattered? I think the first point is that the jury was specifically looking for it out of all of the exhibits they were focused on. Okay. But still, how could it have mattered? All it was was a complaint. It was an internal affairs complaint to initiate an investigation. And also in that complaint was for them to preserve videotape evidence, which the videotape ended up being missing in the case. Yeah. But regardless, Your Honor, the point is the jury was focusing on an exhibit, an exhibit that was admitted, an exhibit that they even noted that I was relying on in my closing statement. And when asked for it, I tried giving them a copy. And Judge Reid relied on it. Well, you told the judge that you thought it would be fine to tell the jury that they should look at wherever it was. You said that's an adequate response to the jury. The first response, though, Judge, was that I asked for a copy to be submitted to the jury, and Judge Burrell says, I'm not inclined to do that. And not in an attackable way, but a very stern way. Mr. Gorski. The difference between, I mean, not inclined to do it, the way it was presented was, I'm not going to let that happen. Mr. Gorski, the colloquy that I know of shows the Court inquiring, do you agree that I should write on the note, response, the parties think that the document you referenced is part of Exhibit A. And you are then quoted as saying, correct. And then Mr. Greger says, yes, Your Honor. And the Court says, thank you, goodbye. I find that hard to square with your declaration that says, I requested the Court on the record to ensure that the handwritten note referred to by the jury was contained in the exhibit folder. The Court ruled that the handwritten note, if not in the exhibit binder, though part of Exhibit A, would not be permitted in the jury room. That's rather a far cry from what you agreed to. Well, Your Honor, I did not have the – you're correct. I did not have the privilege of having the transcript. I'm looking at it from the context of when I had – when I was doing my new trial motion, I did not have the transcript. And did you withdraw your declaration when you got the transcript? No, Your Honor, I did not. But it also squares with what basically was just not inconsistent. Judge Barrell said, I'm not inclined to bring in a copy. That's the way. I asked for a copy to be presented to the jury twice. And the judge said, I'm not inclined. But it is correct that he said that. I'm quite confused. I'm reading the same transcript. I don't see that you ever asked for a copy to bring to the jury. You said, if it's not there, we could send it to the jury. But you didn't say anything about I want to give it to the jury. Where did you say that? And if it's not there – okay. If it's not there, we can just bring them a copy of that. Right. But I think the proposed response should be, we've clarified what we're asking, but if you're referring to the complaint made to Internal Affairs, it's in Exhibit  10. And he says, well, and if it's not, we can bring it to the copy. You didn't say, I want to bring them a copy. I think, Your Honor, we're looking at this from hindsight that the jury did not have the exhibit. When we first got the note, we assumed that the exhibit was in there because they couldn't have. Exactly. And therefore, that's why you – We assumed they told the jury to go look for it, and if they didn't find it and it mattered, they would have come back and said, no, it's not in there. And then maybe the judge would have given it to them or you would have proposed something else. But I would move on to my next point, if I may, Your Honor. Okay, Your Honor. With regard to the Murnell liability on jury instructions, I think there was an abuse of discretion because none of the instructions that were presented were even considered at docket number 85. Well, you know, we don't know whether they were considered. Why don't we just talk about what your principal argument is, which is that it was an error, you believe, not to include the jury instructions that you asked for a couple of times that explained what the term meant, whatever it is, to, you know, the – whatever the – Policy or practice. Policy and practice. Right. Yeah. And you asked for further exponatory instructions, and that's your – you think it was an error that affected the results. Why don't you tell us about that? I think that the two instructions the Court did give on Murnell liability and custom and practice was pretty sparse. It was basically just sparse. But your main argument is that there was no definition for the jury of a longstanding practice or custom. Correct, Your Honor. In fact, there was. But there was a definition for the jury because he added instruction, right? I'm sorry, Your Honor. I know it's hard to hear. Just hold on a second. In fact, there was an instruction for the jury defining long practice. What's a practice or custom? There was two. I believe there was two instructions, Your Honor. One of them defined practice or custom, no? Well, one was more or less just the elements, and the other one defined practice or custom, but it's very, very spartan in nature. I mean, there's a – this, as the – All right. But it did – do you have a problem? I mean, the problem is that your brief doesn't tell us anything. I mean, it's almost – I can't tell whether you have a problem with the instruction, the definition that was given, or what? What was wrong with the definition that was given? It's not the definition that was given. It was that there was not enough given. What you described as sparse was the model jury instruction in this circuit. Isn't that correct? That is correct, Your Honor. But also, it dealt more in lines with arrests out on the street as well, not in a jail context after a person's already in custody. And I think there's a lot of law defining what a pattern of practice is, what a longstanding custom and policy is. And these are other definitional terms that I proposed that the Court read to the jury that were consistent with this circuit as well, and the Court did not even consider them. But what – well, we don't know that he didn't consider them. He didn't give them. But we do know, Your Honor, because if we look at – at pursuant to the pretrial order at docket number 85, I filed with the Court proposed jury instructions on October 14, 2008. On October 31, 2008, at docket number 101, the Court filed proposed jury instructions. Right. And then on November 7th, he filed different proposed jury instructions where he did add a definition of practice or custom. Okay. But in that order of docket 101, it also said proposed modifications should be submitted as soon as practical. Okay. I first – and then on October – excuse me, on October 31st, that same day, I filed an objection, which is marked at docket 105. But the Court had previously already ruled at docket 103 on defendant's objections to certain instructions. Mr. Gorski, the instructions the Court gave was not in any sense erroneous, was it? There was nothing wrong with that model instruction. You're simply saying you wanted more things. I think this type of case deserved more because when preparing these jury instructions, Your Honor, we're faced with the issues that were presented previously, and that was within the motion for summary judgment. So we know what the issues were going to be. Tell me, do you agree that there was no error in the instruction that was given? I agree there was no error in the instruction given. And in your closing argument, you gave a variety of – provided the jury with a variety of examples of what routine policy or practice would be, did you not? Correct, Your Honor. The – does the fact that the trial judge didn't feel it was necessary for him to elaborate on a perfectly correct instruction constitute reversible error? When you said I didn't elaborate, I focused on the facts. But in applying it to the law, I only had that one simple instruction on custom and practice. But I would have liked to have relied on the other areas of the law as well that I proposed and which were not given to the jury. It would have been easier to say that the – You're now talking about instructions beyond those that relate to custom or practice? Correct, Your Honor. What were those? Like, for example, my Special Instruction No. 4 found in ER 56, a failure to properly investigate, like failure to discipline employees, including in the instance of excessive force, is evidence of and supports a finding that not only was it accepted, but was customary. And I cited Gillette v. Delmore and Anthony Reed, Sacramento County. But that's a correct statement of the law, and the jury had the right to apply that law to the particular facts of this case. I could not argue that law in my closing because it was not a jury instruction. What I'm saying is that what you've just read is an example of an elaboration of custom or practice. I think those are the very words that appeared in the – in what you've just read. Yes, Your Honor. I'm sorry. Why couldn't you have argued that? Why couldn't you have gotten up and said, the instruction says, practice or custom means any permanent, widespread, well-setted practice or custom that constitutes a standard operating procedure of the defendant. So why couldn't you have said, look, they didn't even investigate. So that's evidence that they, in fact, had a standard operating procedure of allowing this. I did argue that, Your Honor, but I think the jury needs that to apply. I think you have to look at the layperson on the jury, Your Honor. They're trying to grapple with this. Well, first of all, there's also a second jury note that the jurors were even confused about whether the county Sacramento jail or the county Sacramento in total was the – was the party on trial, so to speak. And just understanding that these people have to only have a few, maybe a week or two, to grapple with all these facts that have been litigated over years, and then we're going to hand them just a simple, sparse instruction, say, here's what custom and practice means, I think that they're entitled to have a definition and that we're allowed to apply those facts, to have custom and practice defined so that the jury can better understand the law. It's easier for me to sit back and read this, but maybe not for the layperson. I guess the question is, I mean, what would you say is your strongest case for the proposition that you were entitled to more instructions when the instructions were not erroneous? Because the initial issues – And what case supports it? I mean, I think there's one, which is Norwood, which is a recent case. There's no one particular case, Your Honor, because it's a question of law, which this Court deals with on a – I mean, there's no one case. Are you saying which case would best define it? Well, which case? I mean, it's fairly unusual, although there was one recent incident, instance, instance, for the appellate court to say that the judge who gave perfectly correct instructions, which would have allowed any – as argument, anything that you have in the – in your special instructions, was abused as discretion with respect to the instructions. Is a case like that? I'm not aware of one off the top of my head, Your Honor. Well, Judge Berzan gave you one, which was a fairly recent case, and seemed directly applicable. I will reserve the rest of my time. I have one minute left. Good afternoon, Your Honors. Tom Kroeger on behalf of the County of Sacramento. The particular instruction at issue, which is Pattern Instruction 9.4, which was combined with another instruction, reads fairly broadly. Practice or custom means any permanent, widespread, well-settled practice or custom that constitutes the standard operating procedure of the defendant. That instruction gave the appellant the opportunity to argue, to present evidence and argue to the jury of all the various acts and or omissions of the county which he would claim constitutes a standard or a custom policy or practice. And I think significantly – How does it tell you what is – what constitutes a customer practice? It doesn't tell you specifically what constitutes a customer practice. It says it's any well-settled practice or custom that constitutes a standard operating procedure. To say a customer practice is a well-settled customer practice, what does that say? Well, you're leaving out the last part, that it constitutes a standard operating procedure, meaning that it's ongoing, repetitive, and in frequent use. It's not just – it's – the custom and practice are normal words. People understand them. They don't have to be specifically defined. But the instruction goes on to point out, and quite correctly, that the alleged custom policy or practice has to be a standard operating procedure, meaning it has to be – it has to be what's going on all the time. It has to be repetitive. What about failing to investigate or failing to reprimand or discipline people who engage in this? Does it have to be in every case? I'm sorry, Your Honor. I didn't hear you. If the county fails to reprimand officers who engage in an improper practice, does that constitute standard operating procedure? If it's on an ongoing, repetitive basis, it doesn't mean it has to be a standard operating procedure, meaning it's occurring every single time, but if it's a standard What does standard operating procedure mean? Doesn't that mean you always do it? Standard operating procedure means a process which occurs on a regular basis. Now, that doesn't mean there's not going to be exceptions to standard operating procedure. The fact – the point is that this Well, is it a custom or practice if it's not a standard operating procedure? Is it a custom or practice if it's not a standard operating procedure? It could be a custom or practice if not a standard operating procedure, but for the purpose of Well, according to this instruction, it couldn't be.  I'm sorry, Your Honor. Under this instruction, it could not be. In order to be a custom or practice, it has to be standard operating procedure. Permanent, widespread, well settled. That constitutes a standard operating procedure. Standard operating procedure. It doesn't say it happens every time. It's permanent, widespread. What about the Norwood case, i.e., there was an instance in which the instruction given was quite accurate, and the argument was that they nonetheless erred to the degree of reversing a jury verdict because they didn't give a defendant's case any further than the instruction that was given. I have to admit I'm not familiar with the Norwood case. However, the purpose of the jury instructions are to give the jury enough information that they can make an intelligent decision on the facts that are presented to them. Well, you have a witness who testified, Lieutenant Toomey, former county of Sacramento, sheriff's department lieutenant, and he said there were 40 or 50 major incidents of excessive force in the jail from 2000 to 2005. He said the officials repeatedly failed to investigate the incidents, discipline the guards, or take other action to address the problem. Now, he didn't say that was a standing operating procedure. He said that was something that happened frequently. Do you think the jury was made clear to the jury by the instruction? Yes, Your Honor, permanent. That that would be enough? Permanent, widespread, well-settled. Yeah. It would be a standard operating procedure. Such that it constitutes a standard operating procedure. So what was the argument? What was the closing argument by the government in the trial? I'm sorry, Your Honor. In the trial, did the government say this is the standard operating procedure or Lieutenant Toomey is wrong, it didn't happen, or what? I don't recall my final argument in that regard, Your Honor. I apologize. It has been some time. If, for example, and I don't know the answer either, you had said, well, supposing all that happened, it still wouldn't arise to a policy or a custom, then the failure to give this instruction could have been relevant. It could have been relevant, possibly relevant. Do you think the instruction is accurate, by the way? 9.4? The proposed instruction, the proposed instructions. The proposed instructions are in fact accurate. Okay. So you're not contesting any of the instructions? I'm not contesting that any of the instructions, which are numbers 1 through 11 and found on the excerpts of records at page 35 to 37, they all correct statements of the law. But they're from cases, they cite cases in the Ninth Circuit, which certainly would explain a lot better to a jury what you mean by custom and practice. However, the way 9.4 is read, it allows the appellants the opportunity to argue those very same issues to the jury and tell them, this is a widespread practice. This is something that You certainly wouldn't say it's a standard operating procedure, would you? Standard operating procedure being defined as something's permanent, widespread, or well settled. Standard operating procedure is not defined as something that occurs every single time. Well, I would say, if I were a jury, that standard operating procedure means it's something that is supposed to happen in every case. And that if you just had a regular, well-established number of cases where you didn't investigate, you didn't discipline, I wouldn't think that would be the standard operating procedure just because it happened in a lot of cases. I don't, you know, I probably wouldn't be a very good juror. Well, I think standard operating procedure, again, Your Honor, the way that the instruction reads, it's broader than something that happens, from what I understand you're saying, standard operating procedure is going to be understood as something which occurs every single time. Yeah. That's not what the instruction says. The instruction says a practice or custom is any permanent, widespread, or well settled. It doesn't say it has to occur every single time. And the instruction 9.4 is such that it allows the appellants to argue all of these things which occur. I might also point out, Your Honor, that the verdict form, which are found at page 6 and 7 of the excerpt of records, does not specifically address Monell. So as far as the Court knows, as far as the record shows, the jury decided that there was no constitutional violation, that there was no use of excessive force. It only asks, does Robert Hunter prevail on his Fourth Amendment claim against the county of Sacramento? The answer is no. Does Plaintiff Howard Ely prevail on his Fourth Amendment claim against the county of Sacramento? And the answer is no. The jury could have found, based on the evidence, that no excessive force was used. They could. And there was enough evidence to support that verdict. And if there's enough evidence to support that verdict, the denial of the motion from the trial was proper. Well, that's the basis. Okay. Go ahead. I might also point out, Your Honor, that in our position, the jury instructions as given, there was no objection, no sufficient objection under Rule 99. Well, there was a motion filed that said, I object to the jury instructions. Not exactly, Your Honor. At page 30, beginning at page 34 are the objections. And appellants say at page 35, Plaintiffs do not object to obstruction 7 as written, since it incorporates the joint instructions proposed by the parties. Moving on to line 13, they request that additional instruction be provided, but there's no specific objection that the failure to offer those additional instructions was improper. And that is, in our view, an insufficient objection under Rule 51. Well, I've, you know, I've come looking for it, but I tried to check that, and I found that they submitted at the end a document that's late-titled objections and said that the defendants object to the instructions. It is, Your Honor. It's at page 34 of the excerpt. It's entitled Plaintiffs' Objections and Modifications to Court-Proposed Jury Instructions. And that's where it said they don't object to number 7. No, they didn't object to 7, no question. But we want to. They wanted to. Right. They objected. Well, what did they object to when they said there were Plaintiffs' proposed objections, or Plaintiffs' objections? They objected to instruction number 6, which was initially written as you should decide each Plaintiffs' case separately and propose a modification of should being changed to shall. Well, so what they should have done is say, according to you, is instead of saying we do not object to instruction number 7, but we would like the following instructions, they should have said we object to instruction number 7, which, although it's accurate, should not stand alone and we should include the following instructions. Is that the difference? The difference is there's no argument, there's no real argument here, no statement made that instruction 7 in and of itself is incompletely sufficient. Well, but that's because it isn't. That's not their argument. Their argument is that it's inaccurate, that it's not sufficient, not that it's erroneous. Then I understand that, Your Honor. However, the notion that it is insufficient without the additional instructions is not sufficiently made under Rule 51 by just saying I would like more of these. So in other words, what you're saying is what I said you were saying, that is that the sentence isn't written right. That instead of saying I don't object to the instruction, but I'd like some other instruction, you should have said I object to the instruction unless you include these other instructions. Yes, Your Honor. I'm sorry. I misheard you. It should have been, it would have been, it would have been appropriate and would have been appropriate to say that the instruction number 7 doesn't work unless you give these additional instructions. And that's not what's said. Well, the case that Judge Berzown was referring to, the plaintiffs argued the defendant failed to preserve their objection, but the record shows they contested the district court's decision not to include the proposed language and made the grounds of as it and then it says an objection need not be formal and defendant's proper language was sufficiently specific to bring into focus the precise nature of the alleged error. That might not be the way we've said it sometimes in the past. I would agree with that, Your Honor. But it is our latest case, and what we said is you've got to alert the judge to what you want, and you don't have to put it in any particular formal language. This was the second time they gave the judge this set of instructions that they wanted, and the judge never commented on them, just ignored them. Now, they took the position that the judge didn't read them, which there's no basis for, but the judge never ruled on them and just never included them. But it does seem that the objection was made when they made it under objection. And whether they're right or not, that, as in this case, that even though the instruction by itself was all right, that it needed further explanation, that's a different issue. And my point there is that the instruction as given gave appellants full opportunity to argue all of these various incidents which were put into evidence as constituting custom policy or practice. Your Honor, I see that my time is very limited. So you're saying custom and practice doesn't really need any explanation? No, Your Honor. They're common words, and they are defined by 9.4. Your Honor, I see that I'm getting my red light here. I would like to just address one issue briefly, which Judge Burrell noted. In the motion for new trial, there was no substantive argument made as to why the failure to include the additional requested instructions was error. It was basically a one-liner. And having not made the argument before the court, the trial court, it's just as if he waived it by not making the insufficient presentation. Do you think they were required to make a motion for a new trial on the error in the jury instructions? Yes, Your Honor. Is that usually the case? Ordinarily, if you object to something at the trial or before the trial, you don't have to do it again after the trial. Well, perhaps I'm misunderstanding the appeal. My understanding of the appeal is directly from the denial of the motion for new trial. Perhaps it's broader. Your Honors, we did not address at all the first issue. I didn't assume that you had questions on that. I don't think that's necessary. Thank you, Your Honors. Unless there's anything else. Thank you. I just have one minute, so I'll be good 53 seconds. Construction number one on ER11, which is the definition provided to the jury, the key word is practice or custom means any permanent. But what also should have been included in that instruction, but also means X, Y, and Z, such as what we proposed. So that's why I say when this instruction was sparse, yes, it is correct as written, but also there's a lot of other ways of defining practice or custom as well. And that's that was our issue, that those should have been elaborated in instruction on ER page 11. Thank you. Thank you, Counsel. Case just argued is submitted.
judges: Pollak, Reinhardt, Berzon